## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YOUNG CHEMICAL COMPANY, on behalf of itself and all others similarly situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>AKZO NOBEL CHEMICALS INTERNATIONAL B.V.; AKZO NOBEL, INC.; EKA CHEMICALS, INC.; ATOFINA CHEMICALS, INC.; ARKEMA, INC.; TOTALFINAELF S.A.; TOTAL S.A.; DEGUSSA CORPORATION; DEGUSSA A.G.; FMC CORPORATION; KEMIRA CHEMICALS, INC.; KEMIRA OYJ; SOLVAY AMERICAN, INC.; SOLVAY INTEROX, INC.; SOLVAY CHEMICALS, INC.; and SOLVAY S.A. )<br><br>Defendants. ) | CIVIL ACTION NO.:<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, Young Chemical Company, on behalf of itself and a class of all others similarly situated, brings this federal antitrust action for treble damages against Defendants, Akzo Nobel Chemicals International B.V., Akzo Nobel, Inc., EKA Chemicals, Inc., Atofina Chemicals, Inc., Arkema, Inc., TotalFinaElf S.A., Total S.A., Degussa Corporation, Degussa A.G., FMC Corporation, Kemira Chemicals, Inc., Kemira Oyj, Solvay American, Inc., Solvay Interox, Inc., Solvay Chemicals, Inc., and Solvay S.A. (collectively "Defendants").

## NATURE OF THE CASE

1.     Plaintiff brings this lawsuit as a class action on behalf of all individuals and entities that purchased hydrogen peroxide and its downstream products sodium perborate and sodium percarbonate (referred to collectively hereinafter as "hydrogen peroxide") in the United States from Defendants, their predecessors, subsidiaries or co-conspirators from at least January

1, 1994 through the present (the "Class Period"). Plaintiff alleges that during the Class Period, Defendants conspired to fix, raise, maintain or stabilize prices for hydrogen peroxide sold in the United States. Because of Defendants' unlawful conduct, Plaintiff and the other class members paid more for hydrogen peroxide than they would have in the absence of Defendants' alleged conduct.

## JURISDICTION AND VENUE

2.      Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. §§15 and 26) to recover damages and costs of suit, including reasonable attorneys' fees, as the result of Defendants' violation of Section 1 of the Sherman Act.

3.      Subject matter jurisdiction is proper pursuant to 28 U.S.C. §1337 and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15, 26.

4.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and (c) and by Section 12 of the Clayton Act, 15 U.S.C. §22.

5.      Defendant Atofina Chemicals, Inc. has its principal place of business in this district and the cause of action arose, in part, within this district. The interstate trade and commerce described herein is and has been carried out, in part, within this district. The unlawful acts done in violation of the Sherman Act occurred within this district.

## PARTIES

6.      Plaintiff, Young Chemical Company, purchased hydrogen peroxide directly from one or more of the Defendants during the Class Period. Plaintiff asserts a claim on behalf of itself and all direct purchasers of hydrogen peroxide from one or more of the Defendants during the Class Period.

7.     Defendant Akzo Nobel Chemicals International B.V. is a Netherlands company with its principal place of business at Velperweg 76, P.O. Box 9300, 6800 SB Arnhem, The Netherlands. Akzo Nobel Chemicals International B.V. is the parent corporation of Defendant Akzo Nobel, Inc., which in turn is the parent of Defendant EKA Chemicals, Inc. During the Class Period, Akzo Nobel Chemicals International B.V., directly and/or through the control of its predecessors, successors, parents, subsidiaries and/or affiliates, was engaged in the business of producing and selling hydrogen peroxide within the United States, including this district.

8.     Defendant Akzo Nobel, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 525 West Van Buren Street, Chicago, Illinois 60607. Akzo Nobel, Inc. is a wholly owned subsidiary of Defendant Akzo Nobel Chemicals International B.V. and the parent of Defendant EKA Chemicals, Inc. During the Class Period, Akzo Nobel, Inc., directly and/or through the control of its predecessors, successors, parents, subsidiaries and/or affiliates, was engaged in the business of producing and selling hydrogen peroxide within the United States, including this district.

9.     In June 2001, Akzo Nobel Chemicals International B.V. was charged by the U.S. Department of Justice with participating in a conspiracy to suppress competition in the world market for monochloracetic acid from September 1995 to June 1997. It pled guilty and was sentenced to pay a $12 million fine.

10.     Defendant EKA Chemicals, Inc. ("EKA Chemicals") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1775 West Oak Commons Court, Marietta, Georgia 30062. EKA Chemicals is a wholly owned subsidiary of Defendant Akzo Nobel, Inc., which in turn is a wholly owned subsidiary of Akzo Nobel Chemicals International B.V. During the Class Period, EKA Chemicals, directly and/or

through the control of predecessors, successors, parents, subsidiaries and/or affiliates, was engaged in the business of producing and selling hydrogen peroxide within the United States, including this district.

11.     Defendants Akzo Nobel Chemicals International B.V., Akzo Nobel, Inc., and EKA Chemicals are collectively referred to herein as the "Akzo Nobel Defendants."

12.     Defendant Atofina Chemicals, Inc. ("Atofina") is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business at 2000 Market Street, Philadelphia, Pennsylvania 19103.  Atofina was formed in 2000 following the merger of TotalFina S.A. and Elf Aquitaine S.A, and was formerly known as Elf Atochem North America, Inc.  Atofina was a wholly owned subsidiary of TotalFinaElf Holdings USA, Inc., which in turn was a wholly owned subsidiary of Defendant TotalFinaElf S.A.  Elf Atochem North America, Inc. purchased DuPont's hydrogen peroxide plant in Memphis, Tennessee in 1998.  In October 1, 2004, Atofina became Arkema, Inc.  During the Class Period, Atofina, directly and/or through the control of its predecessors, successors, parents, subsidiaries and/or affiliates, was engaged in the business of producing and selling hydrogen peroxide within the United States, including this district.

13.     Defendant Arkema Inc. ("Arkema") is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business at 2000 Market Street, Philadelphia, Pennsylvania 19103.  Since October 1, 2004, Arkema has been the successor corporation to Defendant Atofina.  During the Class Period, Arkema, directly and/or through the control of its predecessors, successors, parents, subsidiaries and/or affiliates, was engaged in the business of producing and selling hydrogen peroxide within the United States, including this district.

4

14.    Defendant TotalFinaElf S.A. ("TotalFinaElf") is a French corporation with its principal place of business in Paris, France. TotalFinaElf was the parent of Defendant Atofina, now Defendant Arkema. In May 6, 2003, TotalFinaElf became Total S.A. During the Class Period, TotalFinaElf, directly and/or through the control of its predecessors, successors, parents, subsidiaries and/or affiliates, was engaged in the business of producing and selling hydrogen peroxide within the United States, including this district.

15.    Defendant Total S.A. ("Total") is a French corporation with its principal place of business in Paris, France. Since May 6, 2003, it has been the successor company to Defendant TotalFinaElf. During the Class Period, Total, directly and/or through the control of its predecessors, successors, parents, subsidiaries and/or affiliates, was engaged in the business of producing and selling hydrogen peroxide within the United States, including this district.

16.    In April 2002, one of Total's predecessor companies, Elf Atochem S.A., was charged by the U.S. Department of Justice with participating in a conspiracy to suppress competition in the world market for monochloracetic acid from September 1995 to June 1997. It pled guilty and was sentenced to pay a $5 million fine. In December 2003, the European Commission ("EC") fined Atofina S.A, an affiliate of predecessor company TotalFinaElf, 43.5 million Euros for conspiring to fix prices of organic peroxides from January 1971 to the end of 1999.

17.    Defendants Atofina, Arkema, TotalFinaElf and Total are collectively referred to herein as the "Atofina Defendants."

18.    Defendant Degussa Corporation ("Degussa") is a corporation organized and existing under the laws of the State of Alabama with its principal place of business at 379 Interpace Parkway, Parsippany, New Jersey 07054. Degussa is a wholly owned subsidiary of

Defendant Degussa A.G.  In 1998, Degussa purchased DuPont's hydrogen peroxide plant in Gibbons, Alabama.  During the Class Period, Degussa, directly and/or through the control of its predecessors, successors, parents, subsidiaries and/or affiliates, was engaged in the business of producing and selling hydrogen peroxide within the United States, including this district.

19.     Defendant Degussa A.G. is a German corporation with its principal place of business in Dusseldorf, Germany.  Degussa A.G. is the parent of Defendant Degussa.  During the Class Period, Degussa A.G., directly and/or through the control of its predecessors, successors, parents, subsidiaries and/or affiliates, was engaged in the business of producing and selling hydrogen peroxide within the United States, including this district.

20.     In May 2000, Degussa Hüls, A.G., the predecessor company to Degussa A.G., pled guilty to a charge by the U.S. Department of Justice that it conspired to suppress competition in the world market for niacin and niacinamide (Vitamin B3) from January 1992 to March 1998.  It pled guilty and was sentenced to pay a $13 million fine.  In July 2002, Degussa A.G. was fined 118 million Euros by the EC for its role in fixing the prices of methionine.  In December 2003, the EC fined Degussa UK Holdings, a subsidiary of Degussa A.G., 16.7 million Euros (jointly and severally with Peroxid Chemie GmbH & Co KG) for conspiring to fix prices of organic peroxides from January 1971 to the end of 1999.  And in September 2004, the U.S. Department of Justice fined Degussa UK Holdings $1.5 million for conspiring to suppress competition in the world market for organic peroxides from 1997 to 1998.

21.     Defendants Degussa and Degussa A.G. are collectively referred to herein as the "Degussa Defendants."

22.     Defendant FMC Corporation ("FMC") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1735 Market

6

Street, Philadelphia Pennsylvania 19103. During the Class Period, FMC, directly and/or through the control of its predecessors, successors, parents, subsidiaries and/or affiliates, was engaged in the business of producing and selling hydrogen peroxide within the United States, including this district.

23.    Defendant Kemira Chemicals, Inc. ("Kemira Chemicals") is a corporation organized and existing under the laws of the State of Georgia with its principal place of business at 245 Townpark Drive, Suite 200, Kennesaw, Georgia 30144. Kemira Chemicals is a wholly owned subsidiary of Defendant Kemira Oyj. During the Class Period, Kemira Chemicals, directly and/or through the control of its predecessors, successors, parents, subsidiaries and/or affiliates, was engaged in the business of producing and selling hydrogen peroxide within the United States, including this district.

24.    Defendant Kemira Oyj ("Kemira") is a Finnish corporation with its principal place of business in Helsinki, Finland. Kemira is the parent of Defendant Kemira Chemicals. During the Class Period, Kemira, directly and/or through the control of its predecessors, successors, parents, subsidiaries and/or affiliates, was engaged in the business of producing and selling hydrogen peroxide within the United States, including this district.

25.    Defendants Kemira Chemicals and Kemira are collectively referred to herein as the "Kemira Defendants."

26.    Defendant Solvay America, Inc. ("Solvay America") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 3333 Richmond Avenue, Houston, Texas 77098. Solvay America is a wholly owned subsidiary of Defendant Solvay S.A and is the parent of Defendant Solvay Interox, Inc. During the Class Period, Solvay America, directly and/or through the control of its predecessors, successors,

parents, subsidiaries and/or affiliates, was engaged in the business of producing and selling hydrogen peroxide within the United States, including this district.

27.     Defendant Solvay Interox, Inc. ("Solvay Interox") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 3333 Richmond Avenue, Houston, Texas 77098.  Solvay Interox is a wholly owned subsidiary of Defendant Solvay America, which in turn is a wholly owned subsidiary of Defendant Solvay S.A..  During the Class Period, Solvay Interox, directly and/or through the control of its predecessors, successors, parents, subsidiaries and/or affiliates, was engaged in the business of producing and selling hydrogen peroxide within the United States, including this district.

28.     Defendant Solvay Chemicals, Inc. ("Solvay Chemicals") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 3333 Richmond Avenue, Houston, Texas 77098.   Formed in 2004 from the combination of Solvay Interox, Solvay Minerals and Solvay Flourides, Solvay Chemicals is a wholly owned subsidiary of Defendant Solvay S.A. During the Class Period, Solvay Chemicals, directly and/or through the control of its predecessors, successors, parents, subsidiaries and/or affiliates, was engaged in the business of producing and selling hydrogen peroxide within the United States, including this district.

29.     Defendant Solvay S.A. is a Belgian corporation with its principal place of business in Brussels, Belgium.  Solvay S.A. is the parent of Defendants Solvay America, Solvay Interox and Solvay Chemicals.  During the Class Period, Solvay S.A., directly and/or through the control of its predecessors, successors, parents, subsidiaries and/or affiliates, was engaged in the business of producing and selling hydrogen peroxide within the United States, including this district.

8

30.     In November 2001, Solvay Pharmaceutical B.V., an affiliate of Solvay S.A., was fined 9.1 million Euros by the EC for conspiring to fix prices for cholecalciferol (Vitamin D3) between January 1994 and June 1998.

31.     Defendants Solvay America, Solvay Interox, Solvay Chemicals and Solvay S.A. are collectively referred to herein as the "Solvay Defendants."

## CO-CONSPIRATORS

32.     Various other persons, firms or corporations, not yet named as defendants in this lawsuit, participated as co-conspirators with Defendants in the offenses alleged and performed acts and made statements in furtherance thereof.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action on behalf of itself and as a class action under the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons and entities that purchased hydrogen peroxide and its downstream products sodium perborate and sodium percarbonate in the United States from one or more of the Defendants from at least January 1, 1994 to present. Excluded from the class are the Defendants, their parents, subsidiaries or affiliates.

34.     Plaintiff does not know the exact size of the class, since such information is in the exclusive control of Defendants.  However, based on the nature of the trade and commerce involved, Plaintiff believes that the class numbers at least in the hundreds and that the members of the class are geographically dispersed throughout the United States.  Therefore, joinder of all members of the class would be impracticable.

35.     There are questions of law or fact common to the class, including, but not limited to:

a. whether Defendants conspired to fix, raise, maintain or stabilize the prices and control and restrict output of hydrogen peroxide sold in the United States;

b. whether Defendants conspired to allocate markets for hydrogen peroxide sold in the United States;

c. whether Defendants conspired to restrict the supply of hydrogen peroxide produced in the United States;

d. whether Defendants' conduct caused injury to the business or property of Plaintiff and the class members and, if so, the appropriate class-wide measure of damages; and

e. whether Defendants took steps actively to conceal their conspiracy.

These and other questions of law and fact predominate over any questions affecting only individual members of the class.

36.     The claims of Plaintiff are typical of the claims of the class in that Plaintiff, through the aforementioned assignment, is a direct purchaser of hydrogen peroxide whose purchases were, in all relevant respects, typical of purchases by other class members, and the relief sought by Plaintiff, monetary damages, is common to the class.

37.     Plaintiff will fairly and adequately protect the interests of the class in that Plaintiff is a typical purchaser of hydrogen peroxide, has no conflicts with any other members of the class and is represented by experienced and able antitrust, class action counsel. Further, the interests of Plaintiff are coincident with, and not antagonistic to, those of the class members.

38.     Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy described herein, because such treatment permits a large number of injured persons to prosecute their common claims in a single forum simultaneously, efficiently and without unnecessary duplication of evidence and effort. Class treatment also permits the adjudication of claims by smaller class members who could not afford to individually litigate an antitrust claim against large corporate defendants.

## TRADE AND COMMERCE

39.     All of the Defendants manufacture and/or sell hydrogen peroxide either independently or through a wholly-owned subsidiary.   The hydrogen peroxide products manufactured and/or sold by one Defendant are comparable to and interchangeable with the hydrogen peroxide products manufactured and/or sold by the other Defendants.

40.     During the Class Period, Defendants sold hydrogen peroxide in a continuous and uninterrupted flow of interstate commerce, to customers located in countries and states other than the countries or states in which Defendants produced peroxide.   The business activities of Defendants were thus within the flow of, and substantially affected, interstate trade and commerce.

## FACTS

41.     Hydrogen Peroxide is an inorganic chemical compound ($H_2O_2$) used by a variety of industries because it is a strong oxidizing agent.   It is generally sold as a colorless, syrupy liquid and is available in various standard and specialty grades and concentrations.

42.     In the United States, over half of all hydrogen peroxide is purchased by the pulp and paper industry for bleaching.  The remainder of the United States hydrogen peroxide market is estimated as follows: 12% for water treatment and reclamation; 9% for textiles; 9% for organic chemicals;  4%  for  inorganic  chemicals  (including  laundry  detergents);  and  10%  for miscellaneous uses including electronics and mining.

43.     The United States hydrogen peroxide market is highly concentrated with a small number of companies accounting for nearly all of the hydrogen peroxide sales.

44.     In the 1990's, the market for hydrogen peroxide in the United States fluctuated based upon speculations that the Environmental Protection Agency ("EPA") would favor the use of total-chlorine free ("TCF") bleaching for wood pulp production.  Ultimately, however, the EPA settled on elemental-chlorine free ("ECF") bleaching for wood pulp processing which,

relative to TCF bleaching, requires substantially less hydrogen peroxide.  As a result, the United States had a severe hydrogen peroxide overcapacity.

45.     On or about April 2003, the EC raided several hydrogen peroxide manufacturers in search of evidence of suspected price-fixing, customer and market allocation, and exchange of information relating to sales of hydrogen peroxide, softening agents, solvents and methacrylates.  These manufacturers were reported to be BASF A.G., Degussa A.G. and Celanese A.G.  A fourth manufacturer may also have been raided; the European Commission announced that raids took place in four countries.

46.     On or about January 31, 2005, the European Commission sent a statement of objections to, thus formally charging, eighteen manufacturers, reportedly including Defendants FMC, Total S.A., Kemira Chemicals Oyj, Solvay S.A., Degussa A.G., Akzo Nobel N.V., as well as BASF A.G.  A spokesperson for the European Commission, Jonathan Todd, stated that, "According to the evidence of which the Commission is in possession, competitors agreed on prices, exchanged information on prices and sales volume [and] agreed on reduction of production capacity."  He also stated they also "monitored their anti-competitive arrangements concerning production and sales of hydrogen peroxide and the downstream products [sodium perborate and sodium percarbonate]."

47.     According to several news reports, Defendant Degussa A.G. was the whistleblower, cooperating with the EC in exchange for leniency from criminal fines and other penalties.

48.     In the United States, FMC Corporation announced that a grand jury sitting in the Northern District of California has sent it a subpoena investigating the same type of anticompetitive conduct with respect to hydrogen peroxide in the U.S. between 1994 and 2003.  Both the subpoena and the statement of objections were confirmed in an SEC Form 8-K filed by FMC on February 9, 2005.

## VIOLATIONS ALLEGED

49.     Beginning at least as early as January 1994 and continuing through present, Defendants and their co-conspirators entered into and participated in a combination and conspiracy to suppress and eliminate competition by fixing the prices of hydrogen peroxide sold in the United States and elsewhere.  This combination and conspiracy, which consisted of a continuing agreement, understanding and concert of action to raise, fix and maintain the prices for the sale of hydrogen peroxide sold throughout the United states and elsewhere, was an unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

50.     For the purpose of forming and carrying out their combination and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including, among other things:

   a.     exchanged information on prices being charged for hydrogen peroxide sold to customers;

   b.     agreed to raise, fix and maintain prices for hydrogen peroxide sold to customers;

   c.     raised, fixed and maintained prices for hydrogen peroxide sold to customers; and

   d.     sold hydrogen peroxide to customers throughout the United States at non-competitive prices.

51.     Defendants and their co-conspirators engaged in the activities described in the foregoing paragraphs in furtherance of their conspiracy and for the purpose of effectuating the unlawful contract, combination and conspiracy described herein.  Defendants and their co-conspirators are jointly and severally liable for all damages caused by their conspiracy.

## FRAUDULENT CONCEALMENT

52.     Until recently, neither Plaintiff nor the class members had knowledge of any of the violations alleged herein.  Further, neither Plaintiff nor the class members, until recently, could have discovered, by the exercise of reasonable diligence, that Defendants and their co-conspirators had engaged in the violations alleged herein since Defendants and their co-conspirators actively and fraudulently concealed these violations so as to obscure their illegal activity.

53.     For instance, in its 2002 Annual Report, FMC stated in reference to hydrogen peroxide: "We encounter substantial competition in each of our three business segments.  This competition is expected to continue in both the United States and markets outside of the United States."  This exact language was also used in FMC's 2003 Annual Report.  Further, in response to a reported price increase in February 2000, a spokesperson for Solvay Interox said, "This price increase reflects the continued tightening of the supply-demand balance for hydrogen peroxide in North America."

54.     Defendants engaged in a successful, illegal price-fixing conspiracy that, by its nature, was inherently self-concealing.

55.     Plaintiff and the class members could not have discovered the alleged contract, combination and conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques secrecy employed by Defendants and their co-conspirators to avoid detection of, and to fraudulently conceal, their contract, combination and conspiracy.  Defendants fraudulently concealed the contract, combination and conspiracy herein alleged by various means and methods, including, but not limited to, secret and surreptitious communications.

56.    The affirmative actions of the Defendants herein alleged were wrongfully concealed and carried out in a manner that precluded detection.

57.    By virtue of the fraudulent concealment by Defendants and their co-conspirators, the running of any statute of limitations has been tolled and suspended with respect to any claims that Plaintiff and the other class members have as a result of the unlawful contract, combination and conspiracy alleged in this Complaint.

### EFFECTS/DAMAGES

58.    Defendants' contract, combination and conspiracy had the following effects, among others:

      a.    prices charged by Defendants and their respective subsidiaries and co-conspirators to Plaintiff and the members of the class were maintained at artificially high and non-competitive levels;

      b.    buyers of hydrogen peroxide were deprived of free and open competition in the purchase of hydrogen peroxide; and

      c.    competition in the sale of hydrogen peroxide was unreasonably restrained.

59.    During and throughout the Class Period, Plaintiff and members of the class purchased hydrogen peroxide from one or more of the Defendants, their respective subsidiaries, parents, affiliates and/or co-conspirators.

60.    As a direct and proximate result of Defendants and their co-conspirators' illegal contract combination and conspiracy, Plaintiff and the members of the class were injured and financially damaged in their businesses and property in that they paid more for hydrogen peroxide than they would have in the absence of Defendants and their co-conspirators' unlawful activities. The total amount of damages is presently undetermined.

## PRAYER FOR RELIEF

61.   WHEREFORE, Plaintiff prays as follows:

a.   That the Court determine this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

b.   That the aforesaid contract, combination and conspiracy and the acts done in furtherance thereof by Defendants be adjudged to have been in violation of Section 1 of the Sherman Act, 15 U.S.C. §1, and that Plaintiff and the members of the class have been injured in their businesses and property as a result of such violations;

c.   That judgment be entered for Plaintiff and the members of the class against Defendants for three-fold the amount of damages sustained by Plaintiff and the class as allowed by law, together with the costs of this action, including reasonable attorneys' fees; and

d.   That Plaintiff and members of the class have such other, further and different relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

62.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all the issues triable of right by jury.

Dated:  March 18, 2005                    Respectfully submitted,

Mark S. Goldman
**GOLDMAN SCARLATO & KARON, P.C.**
1845 Walnut Street, Suite 1100
Philadelphia, PA  19103
Telephone:  (215) 545-7200
Facsimile:  (215) 545-6535

Samuel D. Heins
Vincent J. Esades
Matthew W. Ruan
**HEINS MILLS & OLSON, P.L.C.**
3550 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402
Telephone:   (612) 338-4605
Facsimile:   (612) 338-4692

Daniel R. Karon
**GOLDMAN SCARLATO & KARON, P.C.**
55 Public Square, Suite 1500
Cleveland, Ohio  44113
Telephone:   (216) 622-1851
Facsimile:   (216) 622-1852

Krishna B. Narine
**LAW OFFICES OF KRISHNA B. NARINE**
7839 Montgomery Ave.
Elkins Park, Pennsylvania  19027
Telephone:   (215) 771-4988
Facsimile:   (215) 782-3241

Isaac L. Diel
**LAW OFFICE OF ISAAC L. DIEL**
135 Oak Street
Bonner Springs, Kansas  66012
Telephone:   (913) 383-8711
Facsimile:   (913) 422-0307

*Attorneys for Plaintiff, Young Chemical Company*

17